VITARO, APPELLANT, *v.* C. W. & P. CONSTRUCTION CO.
ET AL., APPELLEES.

(Decided April 5, 1940.)

*Messrs. Weygandt & Ross,* for appellant.
*Mr. Edwin S. Wertz* and *Mr. William H. H. Wertz,*
for appellees.

WASHBURN, P. J.   The parties will be referred to as
plaintiff and defendants, as they appeared in the trial
court.

The highway department of the state of Ohio pro-
vided plans and specifications for the improvement of
a section of a road known as No. 30, or the Lincoln
highway, which section extended, from a point near the
east corporation line of Wooster, easterly about four
miles.   The defendants were awarded the contract to
make the improvement.

After the improvement had begun, plaintiff, while riding his motorcycle along the easterly portion of the section being improved, was thrown from his motorcycle and seriously injured, and brought this action against the defendants for damages for such injuries.

At the trial the jury found in favor of the defendants, and judgment was rendered against the plaintiff.

The highway department determined in the plans and specifications for the improvement that the making of the improvement would require the closing to traffic of the section of the road to be improved. The plans and specifications provided that the defendants should provide, erect and maintain barricades "approved by the director," and that defendants should also provide and maintain "suitable and sufficient red lights, and danger signals * * * and take all necessary precautions for the * * * safety of the public"; and the plans and specifications also provided that the director would furnish and erect all "temporary route" and "road closed" signs, and that "the presence of barricades or lights, provided and maintained by any party other than the contractor, shall not relieve the contractor of this responsibility."

The contract for the improvement was signed on October 7, and on Saturday, October 9, the director had erected at least one "road closed" sign, and all of the "temporary route" signs along the temporary route.

On Monday, October 11, in the morning, plaintiff, although he had seen the "road closed" sign, traveled over route 30 east of Wooster, where the improvement was to be made. At that time there were no barricades on the route and no evidence that the improvement had been or was about to be begun, and there is no evidence in the record that the defendants had begun the improvement or had in any manner taken charge of the road.

Thereafter on the same day—Monday, October 11—the director erected the remaining "road closed" signs on route 30, notifying the public that the route was closed east from Wooster and directing traffic on route 30 over the temporary route designated "temporary 30," and later on the same day the defendants, by direction of the highway director, constructed a barricade across the road at the easterly end of the improvement, and, also later in the day, constructed a barricade across the highway at the westerly end of the improvement, which barricades were in all respects in accordance with the plans and specifications. The barricades completely barred traffic along that section of the road to be improved. Both of the barricades and the installation of all of the "road closed" signs were completed by 3 p. m. of that day, and work on the improvement was begun at the east end thereof; and at quitting time of that day the workmen had loosened a portion of the old brick pavement at the east end of the improvement, had cleaned and piled up some of the brick, and had made that portion of the road dangerous for travel; and they left the same without lights or warnings or protection to traffic, if any such there should have been.

A short distance west of the west barricade towards Wooster, and a long way east of any "road closed" signs, there was a road branching off of route 30, extending parallel thereto for a distance of about 2500 feet and a few hundred feet south thereof, and then rejoining route 30 at a point east of the west barricade, which barricade was about midway between where the road branched off of, and the place where it rejoined, route 30. That road, which formed a bypass around said barricade, used to be a part of route 30, and it was kept open bcause there were people living thereon.

There were no barricades, signs, lights or warnings of any kind where the road left or where it rejoined

route 30. Along the four-mile route of the improvement, there were also several roads leading into route 30, most of them at right angles, and as to these intersections, no barricades, warnings or lights of any kind were erected.

On the evening of that same day—Monday, October 11—the plaintiff, a resident of Wooster and familiar with this road and the roads connecting therewith, rode his motorcycle past one of the signs showing that route 30 was closed and directing traffic over a temporary route, and proceeded eastward on route 30; but before he came to the barricade, he turned off of route 30 and onto the by-pass road, claiming that he did so, not because he knew that the barricade had been erected since he was over route 30 that morning, but because, on his way east on route 30 to Canton, he wanted to see a man who lived on the by-pass road. He traveled over the by-pass road and then proceeded eastward along route 30, and, when he arrived near the easterly end of the section where the defendants had been tearing up the road—it being dark—he was, because of the condition of the road, thrown from his motorcycle and injured.

Plaintiff alleged in his petition that the defendants were negligent in not placing any warning signs or lights whatever at or near the point where the by-pass road entered route 30, between the barricades at each end of the improvement, and in failing and neglecting to place warning signs or lights along the portion of the road being improved which was traveled by the plaintiff, and in neglecting to have warning signals or lights at the place where the road was torn up and the accident happened.

To that petition the defendants filed an answer, in which they denied the charges of negligence against them, and charged that the plaintiff traveled along the highway in question when his motorcycle did not carry a light of sufficient strength to comply with the

requirements of law, and that at the time and place where plaintiff was injured he was also violating the law making it an offense for him to ride his motorcycle on a road while the road was in process of repair and was legally closed to traffic, of which fact plaintiff had knowledge, and also that he drove his motor vehicle at a greater speed than would permit him to bring it to a stop within the assured clear distance ahead.

The defendants also alleged that, if it should be found that they were guilty of negligence, plaintiff's injuries were contributed to by his own carelessness and negligence.

The reply denied the affirmative allegations of the answer.

At the close of all of the evidence, the court overruled a motion of the defendants for a judgment in their favor, and, in submitting the cause to the jury, the court charged the jury before argument, at the request of the defendants, that:

"4. I charge you, ladies and gentlemen of the jury, that if you find from the preponderance of the evidence that the part of route No. 30 in question was closed to the public for travel for construction or reconstruction as provided by law, and that the plaintiff had knowledge from 'road closed' signs or otherwise that route No. 30 east of Wooster from the west end of the cut in the cut-off to the Apple Creek Institution road was closed to the public for travel and plaintiff thereafter went upon such closed road by reason of work being done on said road by a road contractor lawfully there, it must be held that the plaintiff assumed the risks which lay in his path on said road and he cannot recover from the defendants."

The court in the general charge also charged the jury that:

"Now, ladies and gentlemen of the jury, I will say to you that your first consideration in this case should be whether or not you find from the evidence that this

highway was ordered closed by the director of highways of the state of Ohio. Secondly, whether or not the plaintiff had knowledge of the closing of the highway. And if you find, ladies and gentlemen, from the evidence, that the director of highways of the state of Ohio closed this highway to public travel, and that the plaintiff, Vitaro, had knowledge of that closing of the highway either by 'road closed' signs, barricades, or any other way, and thereafter went upon that highway, that he went upon that highway at his own risk and that he assumed all of the risks that lay in his path as he traveled on that highway; and if you so find from the evidence, the plaintiff in this case cannot recover and your verdict should be for the defendants.

"Now in the event that you fail to find that circumstance or that the state of facts from the evidence—that is, that this road was not ordered closed or that the plaintiff did not have knowledge that it was ordered closed and was closed—then you will proceed to the matter of whether or not the defendants were guilty of negligence as complained of in the plaintiff's petition. And in the consideration of negligence, if you should find that the defendants were guilty of negligence which directly and proximately caused this injury and damage to the plaintiff, you will then also consider whether or not the plaintiff himself was guilty of any negligence which in any way directly and proximately contributed to his own injury. Now, if you should find from a preponderance of the evidence that the defendants were guilty of negligence, which has been complained of by the plaintiff in his petition, and that that negligence is the sole cause of the injuries and damage which the plaintiff has sustained, then in that event the plaintiff is entitled to recover and your verdict should be for the plaintiff.

"However, if you should find that the plaintiff is guilty of any negligence which directly and proximately contributed to his own injuries, then in that event your

verdict must be for the defendants. In other words, after you first determine whether or not the road was closed, whether or not the plaintiff had knowledge of that fact, and if you fail to find that he had any knowledge of the fact that the road was closed or if the road was not closed, *then you would go to these matters of negligence and contributory negligence.* But if you find in the first place that the road was lawfully ordered closed by the state director of highways, and that the plaintiff had knowledge of that and went .onto that road, he assumed the risk of what lay in his path, and the plaintiff cannot recover and your verdict should be for the defendants.

"But in the event you need to go further, then you must consider the matter of negligence, first on the part of. the defendants, and if you find negligence there then you must consider whether or not the plaintiff himself was negligent." (Italics ours.)

The court also charged as to the burden of proof as to claimed negligence of the defendants, and also the claim of contributory negligence of plaintiff, but nowhere in the charge was anything said concerning the burden of proof on the claim that the plaintiff assumed the risk because, at the time of the injury he was traveling on a highway known by him to have been closed to traffic; the court did not treat that claim as an element of contributory negligence, and the court thereby, as to that claim, eliminated the issue as to proximate cause.

The court very plainly said to the jurors that they need not consider the issue of negligence of defendants or negligence of plaintiff or proximate cause if they found that plaintiff at the time of the injury was traveling on a highway known by him to have been closed to traffic, and it is plainly apparent, from an interrogatory answered by the jury and what occurred in reference thereto, that the jurors did not consider or pass upon any other issue in the case; and as to

that controlling issue the jurors were not told upon which party the burden of proof rested.

It is claimed that the court erred in so charging because there were, and could properly be, but three issues: negligence of defendants, contributory negligence of plaintiff, and proximate cause; that there was no defense of assumption of risk specifically pleaded, and that such a defense would not have been proper if pleaded; that in any event it was unduly emphasized by directing the jury to consider that issue first and as of the greatest importance, thereby permitting the jury to return a verdict without considering proximate cause or any other issue in the case, and without any direction as to burden of proof as to facts which, under the charge, were controlling, and as to which the evidence was very conflicting. It is also claimed that some of the various statements in the general charge in reference to the assumed issue of assumption of risk were inconsistent with others and, therefore, misleading.

As to this latter claim of error, it is true that in some parts of the charge the court seemed to regard the mere ordering of the road closed by the director as equivalent to an actual closing of the road, but in view of what the court charged before argument at the request of plaintiff, we do not think it likely that the jurors were misled into thinking that that was what the court meant.

When both sides rested in this case, did the evidence warrant the court in determining that there was presented both the issue of contributory negligence and the issue of assumption of risk?

The answer pleaded that plaintiff's "injuries were caused by the carelessness and negligence of the plaintiff himself directly contributing thereto as heretofore set out in the defendants' first defense."

Such contributory negligence as was "heretofore set out in the defendants' first defense" consisted of

the claim that plaintiff traveled upon said road with knowledge that it had been closed, and upon a motorcycle not equipped with lights required by law, and at a greater speed than would permit plaintiff to bring it to a stop within the assured clear distance ahead.

It thus appears that the defendants specifically pleaded and denominated as contributory negligence the acts of the plaintiff which the court charged constituted a defense of assumption of risk.

In Ohio it has been held that in a tort action (in that case a negligence action), assumption of risk, as such, is not a defense independent of contributory negligence. *Hine* v. *Eikler*, 19 Ohio App., 510. See, also, *Hauer, Admr.,* v. *French Bros.-Bauer Co.,* 43 Ohio App., 333, 183 N. E., 186.

In the leading case in Ohio where the term "assumption of risk" was used by the Supreme Court in connection with a tort action (damages for negligence in that case), where the plaintiff, without any necessity therefor and solely for his own convenience, departed from a sidewalk provided for his use and walked in the street and was injured by falling or slipping into a catch basin, the Supreme Court observed that "He was not exercising ordinary care for his own safety, under the circumstances; and in departing from the usual and safe way which the municipality had provided for him, he assumed all of the risks which lay in the path which he chose for himself"; but when said case is carefully studied, it will be noticed that the court used the term "assumed the risk" as meaning only that plaintiff was negligent as a matter of law; otherwise the court would have rendered final judgment for the defendant, for there was no dispute as to what the pedestrian did. The charge which the Supreme Court approved and reversed the trial court for not giving, used the term "assumed risk" as the equivalent of contributory negligence, and instructed the jury to return a verdict for the defendant if the

jury found that plaintiff's conduct "was the proximate cause of the accident"; and for failure to give that charge, the cause was reversed and remanded for a new trial. If the pedestrian assumed the risk in the sense that that term was used in the charge in the instant case, there was no occasion for a new trial on the question of proximate cause. That case is *City of Dayton* v. *Taylor's Admr.*, 62 Ohio St., 11, 56 N. E., 480.

In *Highway Construction Co.* v. *Sorna*, 122 Ohio St., 258, 171 N. E., 312, the term "assumption of risk" was used as meaning negligence as a matter of law, and likewise, in *City of Lorain* v. *Griffith*, 50 Ohio App., 505, 198 N. E., 732, this court fell into the same loose manner of expression by using the term "assumes the risk as a matter of law" as equivalent to "contributory negligence as a matter of law."

We know of no case in Ohio to recover damages for negligence where "assumption of risk" has been regarded as a defense separate and apart from the question of contributory negligence.

Assumption of risk usually grows out of contract and seldom arises in purely tort actions. What was pleaded in this case concerning the plaintiff's violating the law by traveling on this highway knowing it to be closed to travel is no different in legal effect than what was pleaded relative to the plaintiff's violating the law as to speed or as to lights on his motorcycle. Certainly what was pleaded was negligence. Assumption of risk is not negligence; it implies knowledge and appreciation of danger and a voluntary, rather than a thoughtless and negligent, act.

We are satisfied that the defendants did not plead, or intend to plead, a so-called defense of assumption of risk, and that under the pleadings and evidence in this record the trial court erred in injecting that matter into the case as a separate and distinct issue and charging upon it in such a way as to prevent the jury

from considering and passing upon the issues as made by the pleadings, including proximate cause.

Traveling on a highway known to be closed to traffic, being a violation of statute, would constitute negligence; but where one does not know and is not otherwise charged with knowing that the condition of the road is such that it is dangerous to so travel, he cannot be properly held to have "assumed the risk" of traveling on such highway.

If assumption of risk was an issue, the court erred in not charging upon the burden of proof as to such issue, and under the circumstances of this case such error was an error of commission rather than omission.

In the instant case, by treating assumption of risk as an independent defense, separate and apart from contributory negligence (the defense that was pleaded), the jury had no opportunity, under the charge of the court, to pass upon the question of proximate cause, and the error in so submitting the cause was, under the circumstances of this case, an error of commission rather than omission.

As it may be of some importance on the retrial of the cause, we hold that the statements of the plaintiff to his companion, when making the arrangements to go on the trip and while on the trip, as to his desire to go on the by-pass road for the purpose of stopping at Fisher's, were competent evidence; and also that the evidence of plaintiff's employer that he requested him to go on this road for the purpose of stopping at Fisher's, was competent.

For the errors in the charge of the court hereinbefore referred to, the judgment is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

Doyle and Stevens, JJ., concur.